# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

ROBERT JAHNKE, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

CREDIT MANAGEMENT LIMITED PARTNERSHIP,

        Defendant.

Case No.: 19-cv-718

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Robert Jahnke is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt arose from a consumer transaction.

6. Defendant Credit Management Limited Partnership ("Credit Management") is a foreign limited partnership with its principal place of business located at 6080 Tennyson Parkway, Suite 100, Plano, Texas 75024.

7. Credit Management is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Credit Management is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Credit Management is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. Credit Management is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about January 28, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "TIME WARNER CABLE." A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt identified in Exhibit A was incurred for telecommunications services used for personal, household, or family purposes.

13. The alleged debt identified in Exhibit A was thus a consumer transaction. Plaintiff received telecommunications services and was billed for those services by way of monthly payments.

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

2

15. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

16. <u>Exhibit A</u> contains the following:

> <u>Our Check Processing Policy:</u> When you provide a check as payment, you authorize us to use information from your check to make an electronic fund transfer from your account or to process the payment as a check transaction. If your check is returned unpaid, you expressly authorize your account to be electronically debited or bank drafted for the amount of the check, plus any applicable fees (calculated as the highest amount permitted by law). The use of a check for payment is your acknowledgement and acceptance of these policies, terms and conditions. Please note that if the original creditor on this account processes your check, you may be subject to a different set of check processing policies. You should contact the original creditor if you have any questions pertaining to how they might process your check.

17. The "Check Processing Policy" stated in <u>Exhibit A</u> is false, deceptive, misleading, and confusing to the unsophisticated consumer.

18. <u>Exhibit A</u> states that "If your check is returned unpaid, you expressly authorize your account to be electronically debited or bank drafted for the amount of the check, *plus any applicable fees* (calculated as the highest amount permitted by law). … Please note that if the original creditor on this account processes your check, you may be subject to a different set of check processing policies."

19. The policies and procedures of licensed collection agencies are governed, in part, by Wis. Admin. Code Ch. DFI-Bkg 74 ("Collection Agencies").

20. With specifically enumerated exceptions, a licensed collection agency "may not charge the debtor any fee, handling charge, mileage costs or other out-of-pocket expenses incurred in the collection of an account." Wis. Admin. Code § DFI-Bkg. 74.11(2)(a).

21. As relating to checks returned to the licensee for any reason, including checks returned for not-sufficient funds ("NSF checks"), licensed collection agencies may charge "actual charges assessed by a financial institution . . . provided the charge is not the result of a licensee prematurely depositing a post-dated check." Wis. Admin. Code § DFI-Bkg. 74.11(2)(b).

3

22. Unless other exceptions apply, original creditors to consumer transactions may charge "all reasonable costs and expenses in connection with the collection of the amount for which the check or draft was written, except recovery is not permitted under this section if a person . . . collected or could have collected a charge for the check or draft under s. 422.202(1)(d) or (2m)." Wis. Stat. § 403.417(7); *see also,* Wis. Stat. § 422.202(1)(d) (capping returned check fees associated with consumer closed-end credit transactions at $15); Wis. Stat. § 422.202(2m) (no cap on contractual fee for consumer open-end credit transactions).

23. On its face, Exhibit A is deceptive and confusing to the consumer because it instructs consumers to mail payments to Defendant but confusingly instructs the consumer that the creditor's policies may dictate the processing of NSF checks.

24. Exhibit A is especially confusing because it states that the processing fee Defendant applied would be "the highest amount permitted by law."

25. Defendant's "actual charges assessed by a financial institution" in the case of NSF checks are, by definition, less than "all reasonable costs and expenses in connection with the collection of the amount for which the check or draft was written."

26. Exhibit A states that the creditor's check processing policies may apply to NSF checks, and the unsophisticated consumer who was charged "all reasonable costs and expenses in connection with the collection of the amount for which the check or draft was written" would be misled to believe she had been charged an amount consistent with "the highest amount permitted by law."

27. On the face of Exhibit A, there is no way to determine which policies Defendant applies to NSF checks.

28. Assuming Defendant applies policies consistent with Wis. Admin. Code § DFI-Bkg. 74.11(2), the Check Processing Policy stated in Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer in that it would threaten the unsophisticated consumer and mislead them to believe that the creditor's NSF check processing policies would apply when Defendant had no intention of applying the creditor's NSF check processing policies.

29. Assuming Defendant does not actually cash checks itself, and instead forwards payments to the original creditor, whose check processing policies are consistent with Wis. Stat. § 403.417(7), the Check Processing Policy stated in Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer in that it under-represents the returned check fees it will attempt to collect by representing that it only collects fees "permitted by law."

30. Plaintiff was misled and confused by Exhibit A.

31. The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

32. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads

a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708,

2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

33. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

34. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

35. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

36. 15 U.S.C. § 1692e(10) also prohibits any "false representation or deceptive means to collect or attempt to collect any debt."

37. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect any debt."

7

38. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

39. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

40. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

41. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

42. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

43. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

8

Case 2:19-cv-00718-PP     Filed 05/14/19     Page 8 of 13     Document 1

44. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

45. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

46. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

47. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

48. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

49. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed debt collectors, has found that "conduct which violates the Federal Fair Debt

9

Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

50. Wis. Stat. § 427.104(1)(j) states, in pertinent part, that "a debt collector may not . . . claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

51. Wis. Stat. § 427.104(1)(L) states, in pertinent part, that "a debt collector may not ... threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. The reference in Exhibit A to the creditor's NSF check processing fee policies is false, misleading, and confusing to the unsophisticated consumer.

54. Defendant threatened to impose a returned check fee in excess of the actual charges assessed by its financial institution in cases of returned checks.

55. Defendant's misrepresentation of the amounts it would attempt to collect in the event a check is returned is an unfair and/or unconscionable method by which to try and collect an alleged debt.

56. The unsophisticated consumer would be confused and misled by the statement that Defendant would, or may, apply the creditor's NSF check policies.

57. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT II – WCA

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

59. Defendant is licensed as a Collection Agency by the Division of Banking in the Wisconsin Department of Financial Institutions.

60. The reference in Exhibit A to the creditor's NSF check processing fee policies is false, misleading, and confusing to the unsophisticated consumer.

61. Defendant threatened to impose a returned check fee in excess of the actual charges assessed by its financial institution in cases of returned checks.

62. Defendant's misrepresentation of the amounts it would attempt to collect in the event a check is returned is an unfair and/or unconscionable method by which to try and collect an alleged debt.

63. The unsophisticated consumer would be confused and misled by the statement that Defendant would, or may, apply the creditor's NSF check policies.

64. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

65. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the Complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between May 14, 2018 and May 14, 2019, inclusive, (e) that was not returned by the postal service.

66. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

67. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

68. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

69. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

70. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

71. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 14, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge @ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com
dmorris@ademilaw.com